080404 Lisa Mannequin v. Sonia P. Yballe, M.D. I submit that my client has really been in a rather Kafkaesque situation where she's been held liable for a million dollars that she never received. Let's go ahead and get to the real crux of the problem here, and that is there was an administrative hearing, and liability arose through that administrative hearing. And to suggest that that's somehow Kafkaesque is a bit derogatory towards our system, because certainly she had an opportunity to challenge the findings. And she's not challenging the findings in this case. But the unfair nature of it arises from the fact that she's unable to seek. Well, then let's get to the point of what sort of proceeding was before the circuit court. If it was a proceeding where a challenge to the finding could have been made, then certainly she could seek to shift that responsibility to the real responsible party. But if it was much more limited, the circuit court proceeding, if it was much more limited, then maybe her hands are tied. Well, her hands would have been tied if she sought administrative review, because she would not then have had the ability, I mean, back five years ago. She would not then have the ability that I believe that she has now when the state brought this case to reduce this to judgment to seek indemnity. That's the point. The unfairness just arises. I mean, she's not contesting the improper billings. That's a dead deal. Five, six, well, I don't know how many years ago now. Well, I do know how many years ago, nine years ago now. But she had no ability in that administrative proceeding to shift the responsibility to the entity that did the billings. It was at that point. I'm sorry. I don't mean to keep cutting you off. But if you say that she really doesn't contest the findings in the administrative hearing, and maybe that explains the reason, or maybe that explains her inaction to file an appeal after the administrative hearings, it seems to me that if she really wanted to place the responsibility on the true responsible party, she had an option immediately after the administrative hearing. But she took no action at all. I'm not sure. I don't believe that she had an option because she didn't have. She couldn't have filed any kind of action to seek a judgment to apportion the responsibility of that judgment? Perhaps she could have filed a declaratory, but she didn't have any right to file an indemnity action like she's filed now because there was no judgment uttered against her. Until this case. Administrative finding is just that. It's a finding. So was the state's responsibility to reduce it to a judgment? Why wait it for more than five years? I don't know. But the state's delay should not prejudice my client's right to bring her indemnity action against the party, the pediatric center, which is the one that engaged in the wrongful billings. Assuming that we agree with your position, what are you asking us to do? What is your fix? Well, the trial court, I've got a two-part fix. But addressing what we've been talking about more immediately, I don't believe the trial court held the statute of limitations ran on her indemnity action. And if an indemnity cause of action doesn't begin to run until the entry of judgment, then we were well within our five years in bringing the cause of action against the pediatric center. You know, I would also like the court to reverse the summary judgment in favor of the state because the trial court didn't even consider the prejudice. The summary judgment order in this case doesn't even mention our laches defense, which we argued in opposition to the motion for summary judgment. We're a little bit tardy in filing the actual paper, the pleading, but it was argued. It was the only defense we had to the state's action. And if the state, if my client is prejudiced merely because the state waited so long, this is an unusual circumstance in which I believe that laches should have been considered. We should at least be allowed to explore why the state waited so long. Give us the thumbnail reason for laches being a defense to the doctor. Why laches? Well, if the statute of limitations applies, laches has two elements. A lack of diligence in bringing your case, which here the state waited more than, curiously waited five years and one week to file this case. What was the nature of the case again? The nature of the case is simply to affirm or to confirm or maybe to reduce to judgment the findings of the administrative hearing. That's what it was, to reduce a finding to a judgment, Your Honor. It doesn't involve any kind of fact finding in the sense of whether liability was properly imposed on the doctor. I agree with that. That's a done deal. And is there a requirement that the state should have filed the registration request, the action requesting the registration in advance of the five years plus one week period? That's what we believe. It was a lack of due diligence. And certainly if the limitations ruling of the trial court stands up, the prejudice is manifest. My client is on the hook for a million bucks because the state. It goes back to Justice Patti's point. What fix could possibly assist your client? You're basically just seeking an opportunity to be heard as opposed to saying, I have a defense or I have a way to really. Well, I have two. I mean, if I'm allowed to assert Elachi's defense, then I don't even have to worry about my third-party action. And if I'm not allowed to assert Elachi's defense, I have a third-party that I can shift liability to. I don't think that's in any way an intangible or theoretical fix at all. I mean, that's real dollars, up to a million dollars, Your Honor, which my client is on the hook for. Even though, I mean, she's personally responsible because she signed that alternate pay agreement. There was nothing in that administrative finding, though, that addressed anything other than the proper billings. There was no adjudication, though, that she was the bad one and the pediatric center wasn't. The pediatric center did all these billings, all the billings without submitting the medical records, all the double billings, and my client is on the hook for something she didn't do. She won't get any of the money. But you understand that from the administrative agency's point of view, they could only go against the person that assumed responsibility. I agree. I agree 100%. That's all they could do. That's all they could do. They had no ability. At that point in time, and this is a critical fact that the trial court misunderstood, at that point in time, the agency had no ability to go after the pediatric center. It wasn't until just a couple years ago. Let's go from that point. If you agree that the administrative agency had no basis to go against the truly culpable party here, who did have a responsibility to go against that truly culpable party? Once the state came after Sonia Yavalle to reduce this to a judgment, she had the responsibility and she filed a third-party action. I think it's timely. The trial court didn't think it's timely. I hope you think it's timely. There's no case in this state that says that a right to indemnity arises upon an administrative finding. They arise upon the entry of judgment or the payment of a settlement. And there was no judgment and no settlement against my client in this case until the state filed this action in 2006. Let me ask you a question regarding latches. Did the judge say that it was a question of law that the court resolved against your client based on an insufficient showing as to the elements of latches? The court's summary judgment doesn't say anything about latches at all. It just enters summary judgment based on the administrative finding. And the fact that we didn't file an administrative review, which I, of course, have no problem with the judgment, but I don't have any problem with the law that we cannot challenge that administrative finding because we had to do that years and years ago. I interrupted you before when you were going through the elements of latches. You had gone through one element. I said lack of diligence. And I interrupted. Now I'd like you to go ahead. Well, that element is prejudice, and the prejudice here arose from the delay, assuming that either, number one, Dr. Ubalde's lost her identity cause of action because of the delay, or number two, the damages of the third party action, if it's allowed to proceed, is unrecoverable because of the fact that the pediatric center has gone out of business. And it's something that wasn't even considered by the trial court. Well, I don't know if it was considered or not. Judge Breyer, obviously, may have thought about it, but he didn't write down anything about it. Actually, I think the court pretty well understands my position. You can wrap it up, and then you can have a couple minutes to respond. Closing remarks. I'd like the court to, number one, reverse the dismissal of the third party action. And I really think that the law of side is pretty universal on when an indemnity action approves. And number two, I'd like a remand directing at least the trial court to consider our latches defense, given the overwhelming prejudice my client has suffered as a result of the state's delay in bringing this to the court. Thank you. All right. Thank you. All right. There are two attorneys. And have you divided your time? All right. There will be one spokesman. Yes. I'm Dan Portis on behalf of the Pediatric Center of Chicago, along with Mr. Ed Green in the middle there, Mr. Rousset from the AG's office. Of our 15, I was going to take 9 or 10. Good enough. And then Mr. Rousset was going to take the remainder. Thank you. Justices, if it may please the Court, I think as I was sitting there listening, I think the panel has their mind around the puzzling aspects of this case, and that is Dr. Yabali didn't – there were many puzzling missteps with no apparent reason for it. And at the end of the day, it was too late. And frankly, I think the bottom line is to accept Dr. Yabali's position here, you just have to completely disregard the administrative mechanism in this state. Well, what's the nature of the circuit court proceedings after a ruling is made or an administrative finding is entered in the administrative proceedings? Sure. What kind of creature is it in short? I'm sorry. What kind of creature is it in short, the nature of the proceedings before Judge Gardner? Well, starting at the administrative level, Dr. Yabali was held personally and solely liable as a Medicaid provider for her actions and the overpayments she received. She had the ability to appeal that decision at the administrative level. She didn't do it. Well, let me interrupt you right there. Let's say she had appealed in a timely fashion. Case goes before Judge Gardner. Sure. At that point, could she have filed a third-party complaint? In the proceedings before Judge Gardner, which goes to Justice Patty's question, what kind of creature is it? Sure. I think she could have. I think she could have at that point. That would have been a proper claim. So she could have back then. She could have later on, but possibly be barred by some affirmative defenses, such as the statute of limitations. Well, when she didn't appeal, the administrative judgment went final in November of 2000. I think if you look at the Hogan case, which is cited in our brief and in the AG's brief, is the most important case. But that goes to my point, because if she had made a timely appeal to the circuit court, the circuit court says the findings by the administrative agency are supported by a manifest way to the evidence. The judgment was properly entered. But now let's address your third-party complaint, and let's see whether you should bear sole responsibility for that judgment. Now, he could have said that. Can he have said that? Could he have said that? Well, yes. So if he could have said it then, why can't he later on say it? And whether the third-party complaint is barred by an affirmative matter is a separate matter that we don't have to address quite yet. Well, because the administrative order went final in November of 2000, and Dr. Ibalde didn't wait more than five years to bring it to court. It could have gone final with a ruling by the circuit court judge saying, I think the administrative finding is adequately supported by the evidence that the administrative agency heard. I mean, what's the difference between that and a final judgment by virtue of default? Well, and I apologize if I'm not quite following, but I think that on an administrative appeal, had the circuit court affirmed, then that would have been the starting point for the five-year statute of limitations for Dr. Ibalde to bring a third-party or pediatric center in. But the bottom line is, but that didn't happen. Well, but I'm saying that if that third-party was filed before Judge Gardner, he would have had the authority to hear it and result. Yeah, I think so, under the administrative review law. But that has long since passed, and Dr. Ibalde didn't appeal. She didn't get herself into that stage of the administrative appeal scheme. Then let's get to the nature of Judge Gardner's ruling. Did the summary judgment was entered based on statutory limitation problems or latches or what? Well, our motion to dismiss the third-party complaint was granted in part on statute of limitations. The AG's office had their summary judgment motion granted. So you're, of course, representing that other third-party, and your motion to dismiss was granted based on statutory limitations, without addressing whether there was any responsibility on your party's behalf for the judgment that was entered against the doctor. Correct, correct. It was based on statutory limitations, and it was also based on collateral estoppel. I mean, I think we have to assume on the collateral estoppel point that the trial court looked at the administrative record and the transcript of the record. Collateral estoppel has a problem. I mean, I have a problem with collateral estoppel again, because if you said that the administrative ruling could have been affirmed by Judge Gardner and yet still be able to address the third-party complaint, and in fact the evidence warranted, if it was timely, and the evidence warranted that your party was responsible for 20 percent, let's say, that he could enter a judgment against your party and indemnify the doctor, if that's what it is. I'm not sure. So why is collateral estoppel – how can you interject collateral estoppel now if you couldn't have interjected collateral estoppel then? Well, because I think we are years beyond – Dr. Yuvali didn't get herself into the appeal stage in the Administrative Law Act. We're well beyond that. And I think that the collateral estoppel point is simply – I mean, Dr. Yuvali took advantage of like 13 days of administrative hearings to say, what's going on here? It wasn't me. It was Pediatric Center of Chicago. They're the wrongdoers. And at the end of the day, at the administrative level, they said, no, sorry, you are personally responsible. We find that you are solely liable. And, you know, my client had intervened for a time, participated in like six days of hearings. And how did – what transpired to make your client disappear or make – withdraw? Well, our clients – the practice of our client was kind of a holistic pediatric care program. They had worked with the state for a number of years to get a special billing code. And when this all came up with Dr. Yuvali, the Pediatric Center got very concerned. They wanted to protect their billing code. They wanted to protect their program. So they got involved. And then I think as the hearings unfolded, they said, look, there is way more going on here than what we are involved in. And we want out. And the state said fine. And the administrative law judge said fine. So that would have made it clear that if there was going to be a resolution of any claims between the doctor and your client, that it should have to be initiated. You sure would think that that would have sounded every alarm bell in the room, that she needed to take affirmative steps to do something if she really thought our client was the wrongdoer. All right. But it didn't. You can wrap it up. That's all I have, Your Honor. I appreciate your time. All right. Thank you. Of course. Good morning, Your Honors. May it please the Court. My name is Paul Resett. I'm an Assistant Attorney General for the State of Illinois. Mr. Resett, why don't you go ahead and try to give us a title or some sort of way to characterize the proceedings. You're going to Justice Patti's question of the proceedings before Judge Garten. Right. This was just an enforcement action to enforce the administrative decision that was issued back in 2000. Are there case laws as to the nature of the proceedings or the bounds or the limitations of an enforcement action that you can't introduce new actions? Well, it's not to declare. The AG did not bring the action to declare that she owed this amount. That had already been settled. So there are no findings of fact, is that what you're saying? Right. The Department does not have the tools that the Circuit Court has to collect the amount, so that's why the Department has to go and ask the Circuit Court to enforce the judgment and use the tools that the Circuit Court has at its disposal to collect the money. So this was really all the matters as to whether she owes the money, et cetera, were all settled, and at this point it's just collecting the amount. Is it really just a question of paperwork? Correct. In the final analysis? Correct. And her only defense to our action was this laches defense where she said that we waited too long to bring the enforcement action, but she's known since 2000 that she owed this money. She did not seek judicial review, administrative review at the time, which she could have done if she thought that she was being incorrectly accused of the overbilling when it was really PCC. She could have sought administrative review, and if the Circuit Court had agreed with her, then she could have not owed this money. She decided to live with the agency decision that she owed this money, but then at the same time she chose not to pay any of it. So not only has she not paid the lump sum, she hasn't made even installment payments on it. So after a number of years went by, the Department asked the Attorney General to file an enforcement action because we need the Chief of the Circuit Court to make her start finally paying some of this money. Regarding her laches defense, unlike laches defense against private parties, when you raise this defense against the government, you can't rely on mere non-action, and that's all that she's relying on here. She's saying that for five years we did nothing to enforce the administrative decision. But the case law is clear that, unlike in the case of private parties, that when you're dealing with the government, that that's not enough. She has to allege that we took some affirmative act that she relied on, that she changed her position to her detriment, but she doesn't allege any such affirmative act. She just alleges that we did nothing, which is inaction. So because of that, there was no genuine issue of material fact regarding whether we took an affirmative act that she relied on. There was nothing that we retracted that, for example, we didn't say to her, we're not going to pursue this, don't worry about it, and then later changed our mind. She just had this irrational hope, as her counsel expressed at the hearing in front of the Circuit Court, that maybe we wouldn't pursue the matter and it would just go away. And that is not enough to assert laches against the government. Even in the alternative, if we just look at the normal factors for laches that apply to both private parties and the government, she has to show that she suffered a material prejudice from the delay in the State bringing the enforcement action. And we say here that she hasn't shown that. There's no genuine issue of material fact, because if this Court agrees with her that the statute of limitations does not bar her third-party complaint against PCC, then she's not prejudiced by the delay because she can still pursue them and she has a chance to show that they, in fact, should be paying some or all of this amount. I think she wants them to pay all of it because it's an indemnification action, not a contribution action. On the other hand, if this Court agrees with the Circuit Court that the statute of limitations applies to the first two counts, we still think that she wasn't prejudiced because she could have filed a separate indemnification action at any time between 2000 and 2005 against PCC. She knew when she did not seek administrative review of the administrative decision back in 2000 that she owed this amount. So at that point, she could have gone into Circuit Court, just brought an action in her against PCC, and asked the Circuit Court to declare that they were responsible to indemnify her. And she could have done this either as a separate count with an administrative review action if she chose to appeal the Department's decision, or if she decided to live with the Department decision as she did here, she could have filed a separate action. This Court said in the Hokie case that in a case like this where the Department found that a Medicaid provider overbilled, that's a conclusive administrative determination when you don't seek judicial review, and it's in the nature of a money judgment. So she's known since 2000 that she owes this money, and she did nothing. Really, she is the one who is guilty of latches, and it was only after PCC accused her of latches that she turned around and said that the State was guilty of latches. Unless the Court has any questions, we would ask that you affirm. All right, thank you very much, Mr. Rancher. Mr. Swafford, very briefly, why don't we go to, do you have any dispute regarding the assertion from the Attorney General's office that in fact latches against the government agency requires more than simply non-action? Yes, thank you. Well, except for the one case I stated. I did cite a case in my reply brief, the name was T-Vox or O'Barris or something, in which non-action was still, even though there was non-action, latches was applied by the State because the State just sat by and did nothing when it had the ability to do something. So we'd have to look at that case to see where that leads us. Would you please? All right. Then the next question is? The next question is? I would like to just comment, though, that the way this was just the summary judgment was just so summarily entered without the judge finding or considering latches. It's not like we need time or ability to even explore what the State was doing for five years. Let's address that point because the Attorney General's assertion is that they asserted, they claimed latches, that the doctor engaged in latches, and it wasn't until they alerted the doctor, or perhaps it was the other pediatric center, that they alerted your client that latches might come into play that she asserts it against. I don't understand how the pediatric center alerted it. Did they raise latches against her? They raised the statute of limitations against her when this suit was filed. Okay. All right. Let's go back to another point that I wanted to make in light of latches. Let's say because you've already indicated that, and it is the final judgment, that the amount of money was set to be owed by the doctor. Let's say she started paying that judgment or that finding, you know, without having to go to the circuit court. If she got into an assettlement with the State, that would have triggered the statute of limitations. No, that's not my point. My point is that she still had the right to file suit against the pediatric center. I don't know that she, I don't see under the case law where she had the right to sue them for indemnity. So are you saying that judgment only can be entered by an action by the State as opposed to a final judgment being entered by the administrative agency? Administrative agencies don't enter final judgments. They enter findings and it's the State's responsibility to reduce it to judgment. It wasn't in their paperwork. You want to give me a case for that? Do you have a case for that? That, in fact, the agency, the winning agency before an administrative proceeding, must go to the circuit court to, in fact, make that, get a judgment? I believe Mr. Rousset acknowledged when he was up here that they could not enforce the judgment. They could not enforce the finding until they reduced it to judgment. I think they were looking for compliance, not enforcement. Thank you very much, Mr. Swartz. Thank you, Your Honor. Thank you.